Diane R. WARNER, Appellant,

v.

DEPARTMENT OF TRANSPORTATION, Division of Motor Vehicles and Transportation Commission, Respondents.

Court of Appeals

*No. 80–491. Submitted on briefs November 11, 1980.—*
*Decided April 7, 1981.*
(Also reported in 306 N.W.2d 266.)

For the appellant the cause was submitted on the briefs of *Steven C. Helland* and *Croak Law Offices* of Madison.

For the respondents the cause was submitted on the brief of *Bronson C. La Follette*, attorney general, and *Albert O. Harriman*, assistant attorney general.

Before Donlin, P.J., Foley, J., and Dean, J.

DEAN, J. Diane R. Warner, while operating her vehicle without liability insurance, had an automobile accident with a pedestrian. The Transportation Commission ordered her license suspended unless adequate security was posted. The circuit court affirmed this order. Warner appeals the judgment, arguing that the Commission lacked jurisdiction. She contends that the provisions of sec. 344.13(3),[1] Stats., require the secretary of transportation to give written notice of the security required within ninety days from receipt of the accident report. Since the notice arrived after ninety days, Warner asserts that the Commission could not suspend her license. The trial court determined that the ninety-day period established by sec. 344.13(3) is advisory and not mandatory, allowing the Commission to

---

[1] Section 344.13(3), Stats., provides:

The secretary within 90 days after receipt of a report of an accident of the type specified in s. 344.12 and upon determining the amount of security to be required of any person involved in such accident or to be required of the owner of any vehicle involved in such accident, shall give at least 10 days' written notice to every such person of the amount of security required to be deposited by the person. The notice also shall state that an order of suspension will be made as provided in s. 344.14, unless within such time security is deposited as required by the notice. The order of suspension may be made a part of the notice, with a provision that it will take effect on the date specified in this subsection unless security is deposited prior to that date.

suspend even though notice was not given within that time. Because the trial court properly interpreted sec. 344.13 (3), we affirm.

Warner initially argues that the statute is unambiguous, and the general rule is that the word "shall" is presumed mandatory. She claims that construction of a statute is inappropriate where no ambiguity exists.[2] Warner further asserts that by using both "shall" and "may" in the same provision, the legislature was aware of the denotations these words impart and intended the words to have their precise meanings.

The use of the word "shall" in the context of this statute is ambiguous. The test for ambiguity is whether the statute may be understood in two different ways by reasonably well-informed people.[3] Statutes setting time limits have often been held directory despite the use of the word "shall." The statutory language provides no insight into whether the time period is directory or mandatory. Well-informed persons could thus reasonably reach either interpretation. While the use of both "shall" and "may" in the same statute suggests that the legislature was making a distinction, this usage only provides an inference, and this inference will not preclude an inquiry into the legislature's clear intent.[4]

The factors to be considered when addressing the question of mandatory versus directory construction were set forth in *Cross v. Soderbeck,* 94 Wis.2d 331, 340–41, 288 N.W.2d 779, 783 (1980), as follows:

In determining whether a statutory provision is mandatory or directory in character, we have previously said that a number of factors must be examined. These include the objectives sought to be accomplished by the

---

[2] *Kenosha County Dep't of Social Services v. Nelsen,* 95 Wis.2d 409, 414, 290 N.W.2d 544, 547 (Ct. App. 1980).

[3] *Id.*

[4] *Karow v. Milwaukee County Civil Service Comm'n,* 82 Wis.2d 565, 571, 263 N.W.2d 214, 217 (1978).

statute, its history, the consequences which would follow from the alternative interpretations, and whether a penalty is imposed for its violation. *Marathon County v. Eau Claire County* (1958), 3 Wis.2d 662, 666, 89 N.W.2d 271; *Worachek v. Stephensen Town School Dist.* (1955), 270 Wis. 116, 70 N.W.2d 657. We have also stated that directory statutes are those having requirements "which are not of the substance of things provided for." *Manninen v. Liss* (1953), 265 Wis. 355, 357, 61 N.W.2d 336.

Warner contends that a major objective of the Wisconsin Safety Responsibility Act is to punish by revocation of an uninsured driver's license. Had the legislature intended the statute to insure payment for damages, Warner argues, they would have made the maximum revocation time equivalent to the statute of limitations for recovery. Warner also suggests that the legislature was less concerned about compensation than punishment, since revocation of driving privileges would often lead to loss of employment and, consequently, the ability to make payments.

The nature of the Wisconsin Safety Responsibility Act is predominantly remedial. Section 344.09(1),[5] Stats., provides that operating privileges will be reinstated when the reason for the suspension has been removed. No further restrictions are imposed once security has been deposited. It is the uninsured motorist who thus controls the revocation of the driving privileges by determining when to deposit security.[6]

---

[5] Section 344.09(1), Stats., provides:

Whenever the secretary is satisfied that the reason for suspension of an operating privilege under this chapter has been removed, including satisfaction of any of the requirements of s. 344.18, the secretary shall forthwith order reinstatement of such operating privilege and shall give notice of such reinstatement to the person whose operating privilege has been suspended. Such reinstatement order has the same effect as an automatic reinstatement under s. 343.39.

[6] In this sense, the Wisconsin Safety Responsibility Act is similar to the remedial nature of civil contempt.

Warner's argument that a longer maximum revocation time would show legislative concern for compensation while the shorter time denotes a punitive intent is without merit. The present maximum revocation time reflects a reasonable period within which an uninsured motorist could be expected to provide security. The imposition of a remedial sanction beyond a reasonable time will result in its being considered a penal sanction.[7] We conclude that the legislature selected the shorter maximum revocation time to preserve the remedial nature of this statute.

Warner's loss of employment argument is also unfounded. The legislature has specifically provided a method by which an uninsured motorist may retain his or her license while paying installments on all claims.[8] This provision clearly shows the legislature's concern for compensation. We conclude that a directory interpretation of the statute would further these remedial goals.

Warner next argues that the legislative history of the statute shows that the legislature intended the present form of sec. 344.13(3) to be mandatory. She asserts that the 1957 amendment to sec. 344.13(3) was to bring the statute into conformity with the nonmandatory administrative practice. The 1959 amendment, Warner contends, exhibited legislative discontent with the administrative practice and made the provision mandatory.

The changes made in sec. 344.13(3) in 1957 and 1959 reflect a substantive change in suspension procedure and not a change from directory to mandatory application. The 1957 provision stated that an order of suspension would be made sixty days following the receipt of the accident report. The 1959 provision established

---

[7] *See State v. King*, 82 Wis.2d 124, 137, 262 N.W.2d 80, 86 (1978).

[8] *See* §344.14(2)(h), Stats.

a sixty-day time period for the sending of notice, not when the order of suspension would take effect. Such a material difference in the content of the two provisions negates the proposition that the change was enacted to make the statutory language mandatory.

Warner's suggestion that the Legislative Reference Bureau's use of the word "must" in an analysis of the 1967 provision connotes a mandatory interpretation is incorrect. The 1967 change expanded the time period from sixty to ninety days. This change did not affect the meaning of the word "shall" as used in the provision, nor was the analysis focused upon that meaning. The analysis thus sheds no light on interpreting the legislative intent in its use of the word "shall."

■

The failure of the legislature to make sec. 344.13(3) clearly mandatory after the issuance of an attorney general's opinion,[9] which characterized the statute as directory, indicates that the opinion correctly defined the legislature's intent. Warner argues that the attorney general's opinion is not relevant to the present case, since it dealt with a different statute and a different set of facts. While we agree that substantial changes have been made in this statute since 1946, these changes have not touched on the directory or mandatory nature of the statute. Thus, a 1946 interpretation of the word "shall" is relevant regarding its current use. We do not consider a change in the factual setting to have any bearing on how "shall" is interpreted in a statute. We conclude that the attorney general's characterization of the statute as directory properly set forth the legislature's intent.

■

Warner next contends that the "substance of the thing provided for" is a jurisdictional limitation to insure that

---

[9] 35 Op. Att'y Gen. 210 (1946).

notice is sent to the motorist within ninety days. We disagree. As was stated in *Herro v. Natural Resources Board,* 53 Wis.2d 157, 177, 192 N.W.2d 104, 114 (1971), " '. . . [a] statute prescribing the time within which public officers are required to perform an official act is merely directory, unless it denies the exercise of power after such time, or the nature of the act, or the statutory language, shows that the time was intended to be a limitation.' " Section 344.13(3) makes no provisions for any consequences resulting from a failure to timely give notice. We are furthermore unable to see how Warner was prejudiced by the late notice. Moreover, adopting Warner's jurisdictional characterization would defeat the remedial objectives of the statute. While a delay in sending of this notice is not to be condoned, it does not necessarily operate to deprive jurisdiction.

Warner concedes that no penalty is imposed upon the Department of Transportation for a violation of sec. 344.13(3). The absence of a penalty is consistent with a directory interpretation. From the foregoing *Soderbeck* analysis, we conclude that sec. 344.13(3) is directory in nature.

Finally, Warner argues that "shall" covers both the ninety-day and the ten-day periods in sec. 344.13(3), and that if the ninety-day period is directory, the ten-day period is also directory, making the entire provision meaningless. By inserting the phrase "at least" before the ten-day period, the legislature made the second time limit mandatory.[10] The inclusion of this commanding phrase is further evidence that the legislature intended "shall" to be directory.

*By the Court.*—Judgment affirmed.

---

[10] *Schmeckpeper v. Panhandle Coop. Ass'n,* 180 Neb. 352, 359, 143 N.W.2d 113, 117 (1966).